MARYLAND PEOPLE'S
COUNSEL, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent, Laclede Gas Company, Consumers Power Co., et al., Exxon Corporation, Columbia Gas Transmission Corp., et al., Shell Western E & P Inc. and Shell Offshore, Inc., Transcontinental Gas Pipe Line Corp., Champlin Petroleum Company, City of Charlottesville, Virginia, Indiana Gas Company, Inc., Panhandle Eastern Pipe Line Co., et al., Pacific Lighting Gas Supply Co., et al., Washington Gas Light Company, Louisiana Intrastate Gas, Tenneco Oil Company, et al., Texas Eastern Transmission Corp., UGI Corporation, Process Gas Consumers Group, Pennsylvania Gas and Water Company, Pennsylvania Public Utility Commission, Columbia Gas Distribution Companies, Baltimore Gas and Electric Company, Consolidated Edison Co. of New York, Inc., Philadelphia Electric Company, Long Island Lighting Company, Brooklyn Union Gas Company, Public Advocate—State of New Jersey, Pacific Gas and Electric Company, Mesa Petroleum Company, Cities Service Oil & Gas Corporation, Citizen Energy Corporation, General Service Customer Group, United Gas Pipe Line Company, Intervenors.

LACLEDE GAS COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent, Indiana Gas Company, Inc., Baltimore Gas and Electric Company, Pennsylvania Gas and Water Company, Tenneco Oil Company, et al., Tennessee Gas Pipeline Co., Columbia Gas Transmission Corp., et al., Transcontinental Gas Pipe Line Corp., City of Charlottesville, Virginia, Shell Western E & P Inc. and Shell Offshore, Inc., Brooklyn Union Gas Company, Panhandle Eastern Pipe Line Co., et al., Cities Service Oil & Gas Corporation, Public Advocate—State of New Jersey, Consumers Power Co. and

Michigan Gas Storage Co., Washington Gas Light Company, South Jersey Gas Company, General Service Customer Group, Pacific Gas and Light Company, Pacific Lighting Gas Supply Co. and Southern California Gas Co., United Gas Pipe Line Company, Intervenors.

Nos. 85–1029, 85–1086.

United States Court of Appeals,
District of Columbia Circuit.

Aug. 6, 1985.

Carmen D. Legata, Thomas M. Lemberg, Washington, D.C., John K. Keane, Jr., Thomas C. Gorak, Baltimore, Md., and Kenneth Neises, Washington, D.C., were on the response of petitioners Maryland People's Counsel and Laclede Gas Co.

Ernest C. Baynard, III, Jerome M. Feit and Joanne Leveque, Washington, D.C., were on the response of respondent F.E.R.C.

John W. Hardwicke, Baltimore, Md., was on the response of intervenor Maryland Industrial Group.

Edmunds Travis, Jr., Houston, Tex., and Douglas W. Rasch, were on the response of intervenor Exxon Corp.

Bolivar C. Andrews, Houston, Tex., and Carl W. Ulrich, Washington, D.C., were on the response of intervenor Texas Eastern Transmission Corp.

Constance D. Coleman, Houston, Tex., was on the response of intervenor Champlin Petroleum Co.

Lewis Carroll, Birmingham, Ala., was on the response of intervenor Washington Gas Light Co.

Richard M. Merriman and Matthew W.S. Estes, Washington, D.C., were on the response of intervenor General Service Customer Group.

William R. Hoatson, Newark, N.J., Charles A. Moore, Houston, Tex., Steven H. Neinast, Washington, D.C., Glen E. Taylor and Phyllis Rainey, Houston, Tex., were on the response of intervenors Tenneco Oil Co., et al.

George A. Avery and Daniel L. Koffsky, Washington, D.C., were on the response of intervenor Consumers Power Co. and Michigan Gas Storage Co.

Michael R. Waller and Kathleen T. Puckett, Houston, Tex., were on the response of intervenor Tennessee Gas Pipeline Co.

Stephen J. Small, Charleston, W.Va., was on the response of intervenors Columbia Gulf Transmission Co. and Columbia Gas Transmission Corp.

Nancy J. Skancke, Washington, D.C., was on the response of intervenor Mesa Petroleum Co.

Frank P. Saponaro, Jr. and Jennifer K. Walter, Washington, D.C., were on the response of intervenor UGI Corp.

Lynn R. Coleman, Washington, D.C., was on the response of intervenor Cities Service Oil and Gas Corp.

Roger C. Post, Columbus, Ohio, was on the response of intervenor Columbia Gas Distribution Companies.

Thomas F. Ryan, Jr., Washington, D.C., was on the response of intervenor Transcontinental Gas Pipe Line Corp.

Charles A. Herndon, Jr. and Hodges B. Childs, Baltimore, Md., were on the response of intervenor Baltimore Gas and Elec. Co.

James P. Melia and John F. Povilaitis, Harrisburg, Pa., were on the response of intervenor Pennsylvania Public Utility Com'n.

Edward J. Grenier, Jr., William H. Penniman and James P. Rathvon, Washington, D.C., were on the response of intervenor Process Gas Consumers Group.

Before MIKVA, GINSBURG and SCALIA, Circuit Judges.

Opinion Per Curiam.

PER CURIAM:

In *Maryland People's Counsel v. FERC,* 761 F.2d 768 (D.C.Cir.1985) (*MPC I*), we found that authorization by the Federal Energy Regulatory Commission (Commission) of a "special marketing program" (SMP)—under which a pipeline and its producers agreed to "amend the high-priced gas purchase contracts entered into between them in earlier years, so as to permit the producers to sell the committed gas elsewhere (at current market prices), crediting the volume of such sales against the pipeline's high-priced purchase obligations," *id.* at 770—was arbitrary and capricious. We held that the Commission had failed to set forth a reasonable basis for its decision to exclude "captive customers" from eligibility to purchase the cheaper released gas. Because the original SMP orders had already expired, however, and because challenges to two successor orders had already been filed in our court, we "direct[ed] the Commission and intervenors on behalf of the Commission in those cases ... to show cause why the successor orders should not be vacated and remanded

for reconsideration in light of [our] opinion." *Id.* at 779.

Inspection of the successor orders, aided by the more than twenty responses to our show-cause order, convinces us that the Commission's promulgation of these orders is—as in *MPC I*—infected by a failure to come to grips with highly relevant considerations urged by petitioners Maryland People's Counsel (MPC) and Laclede Gas Company. Rather than vacate the orders, however, we believe that the more judicious course is to allow them to remain in effect until their stated expiration date of October 31, 1985. That date coincides with the Commission's self-imposed deadline for taking final action on proposed rules, *see* Notice of Proposed Rulemaking, 50 Fed. Reg. 24,130 (1985), that appear to address or render academic the court's concerns in *MPC I* and in *Maryland People's Counsel v. FERC,* 761 F.2d 780 (D.C.Cir.1985) (*MPC II*).

I.

Numerous respondents (but not the Commission) contend that the petitioners lack standing to challenge the successor orders except insofar as those orders affect individual SMP dockets in which the petitioners have formally intervened. They argue, for example, that "[t]he Commission's issuance of a single order on September 26, 1984, extending the authorization of the ten extant SMPs, was equivalent to the issuance of ten separate orders, each extending the authorization of one SMP. The Commission did *not* consolidate any of the ten SMP proceedings." Response of General Service Customer Group to Show Cause Order at 4 (footnote omitted); *see Tenneco Oil Co.,* 28 F.E.R.C. ¶ 61,383, at 61,684 (Sept. 26, 1984) (*Extension Order*) (listing dockets); *see also Tenneco Oil Co.,* 31 F.E.R.C. ¶ 61,171 (May 17, 1985) (establishing inquiries purportedly tailored to specific SMP dockets). Similar reasoning leads these respondents to conclude that our jurisdiction under the Natural Gas Act does not extend to the adjudication of claims regarding SMPs that the petitioners

have not challenged by name; the petitioners, so the argument goes, are neither party to those proceedings nor aggrieved by the orders issued in them. *See* Natural Gas Act § 19(b), 15 U.S.C. § 717r(b) (1982).

We do not believe it necessary or proper to fractionate the challenged orders into as many pieces as there are SMP sponsors. However attentive the Commission is or has been to the particular circumstances revealed by particular SMP dockets, it appears evident that the orders at issue were designed to blanket all extant and future dockets—to operate, in other words, as rules of general application. They were born, in part, of responses to a "Notice of Inquiry" issued in a rulemaking docket; they resulted in the imposition of "uniform conditions on all of the programs, and [in the requirement] that each certificate holder file a statement to the effect that the individual SMP will be conducted in accordance with these conditions." *Extension Order*, 28 F.E.R.C. at 61,685; *see Tenneco Oil Co.*, 29 F.E.R.C. ¶ 61,334, at 61,695 (Dec. 21, 1984) (*Rehearing Order*) ("The uniform conditions imposed in the [*Extension Order*] superseded all other conditions in previously-authorized SMP certificates."). "New proposals for SMPs will also be subject to these conditions." *Extension Order*, 28 F.E.R.C. at 61,685. SMP sponsors, it is true, might obtain variances from the Commission, *see, e.g., Transcontinental Gas Pipe Line Corp.*, 30 F.E.R.C. ¶ 61,322 (Mar. 27, 1985), but only at the cost of forfeiting eligibility for "authorization ... on an expeditious basis," *Extension Order*, 28 F.E.R.C. at 61,685—a high price to pay in an industry in which, as revealed in our review of streamlined certification procedures in *MPC II*, time is of the essence.

In short, we have before us "uniform conditions" formulated in an omnibus "proceeding" to which the petitioners were surely "parties"—a proceeding the petitioners timely requested the Commission to rehear and petitioned this court to review. That the petitioners themselves are not necessarily aggrieved by every application of the conditions diminishes neither their right to seek a declaration that a systemic defect renders the conditions as a whole invalid nor our power to grant that relief.

## II.

In *MPC I*, we held that the Commission had failed to consider highly "relevant factors," *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), in excluding customers without short-term alternative fuel or gas supply options from eligibility to purchase the cheaper released gas made available under SMPs. Defenders of the Commission's successor orders contend that the Commission has since supplied the reasoned basis we found missing in *MPC I* and has imposed on SMPs a new, captive-consumer-favoring condition that compels affirmance of the orders or at least distinguishes the orders from their predecessors sufficiently to preclude summary action by this court. The condition referred to requires that "anyone with a firm contractual entitlement to purchase gas from a releasing pipeline ... be permitted to nominate up to ten percent of its firm contractual entitlement to be purchased for system supply under the SMP." *Extension Order*, 28 F.E.R.C. at 61,686. The Commission and its supporters hail the "10% rule" as captive consumers' ticket to a more direct share in the benefits of a spot market for gas; detractors condemn it as a mere palliative.

Before turning directly to the 10% rule, we examine the successor orders—all issued before our decision in *MPC I*—to determine whether they adequately justify, in a way that their predecessors did not, the discriminatory terms built into the original SMPs. Though the initial SMP orders may have reflected only the Commission's desire to experiment, respondents urge that the successor orders build on the *results* of the experiment and therefore deserve to be upheld against the petitioners' purely theoretical challenges. However one might characterize the challenges, ar-

guments as "massively significant," *MPC I*, 761 F.2d at 776, as those raised by the petitioners merit convincingly reasoned rejection, and this the Commission has still not furnished.

"The information gained from [existing] programs," the Commission announced, "confirms our earlier view that all customers and consumers served by the pipelines that are releasing gas for sale under the SMPs are benefitting from the programs." *Extension Order*, 28 F.E.R.C. at 61,685–86. But the benefits cited by the Commission—increased take-or-pay relief, wider fixed-cost spreading, further exploration and development of natural gas reserves, *id.* at 61,686—are the same ones this court rejected as justifications in *MPC I*, 761 F.2d at 774–77, and *MPC II*, 761 F.2d at 788–89, in view of the Commission's failure to explain why they would not obtain in the absence of eligibility restrictions and why they would not be "dwarfed by the savings from competitive pricing forgone as a consequence" of those restrictions, *MPC I*, 761 F.2d at 776.

In a subsequent announcement denying MPC's motion for a stay of the successor orders, the Commission did posit that SMPs had enabled captive consumers to save on gas costs as well as fixed costs: "[T]he average cost of purchased gas by the pipelines actually declined [between 1983 and 1984. This] shows that better price signals are being sent to producers from all end-use categories. We believe that the SMPs have played a significant part in this process." *Tenneco Oil Co.*, 30 F.E.R.C. ¶ 61,202, at 61,411 (Feb. 26, 1985) (*Stay Order*); *see also id.* ("[Initial] price signals benefited all end-use categories, because the pipelines realized that their gas costs were already too high and that any further increases would further reduce consumption."). Other than by a fleeting allusion to the "reference point" pricing theory we found troublesome in *MCP II*, 761 F.2d at 788, the Commission did not divulge its basis for believing that SMPs have had anything to do with falling gas prices; nor, once again, did it make clear why captives would not be far better served by unfet-

tered access to SMP gas. The Commission merely attacked MPC's theory for "ignor[ing] the importance of price elasticity in all end-use markets." *Stay Order*, 30 F.E.R.C. at 61,411. As the petitioners point out, however, that there are economic limits even to a monopolist's exploitative power does not justify his exercise of the power to the fullest extent permitted by those limits.

In describing the 10% rule as a "limited expansion" of eligibility to buy SMP gas, *Extension Order*, 28 F.E.R.C. at 61,686— one that would "reduc[e] discrimination," *id.* at 61,687—the Commission implicitly recognized that substantial discrimination would remain. It may well be that the Commission has taken one step out of the chasm (*but cf.* ASSISTANT SECRETARY FOR POLICY, SAFETY, & ENV'T, U.S. DEP'T OF ENERGY, INCREASING COMPETITION IN THE NATURAL GAS MARKET: THE SECOND REPORT REQUIRED BY SECTION 123 OF THE NATURAL GAS POLICY ACT OF 1978, at 86 (DOE/PE–0069 Jan. 1985) ("Th[e successor orders] increase[ ] pipeline companies' ability to use discriminatory pricing.... Rather than eliminating anticompetitive constraints on SMP's, FERC has introduced additional opportunities for pipeline companies to segment markets and charge monopolistic prices in each segment.")); we are nonetheless obliged to inquire whether the Commission has propounded a sufficiently reasoned basis for sanctioning substantial residual discrimination.

The orders themselves do not disclose such a basis. First, there are no apparent grounds for the choice of ten percent, as opposed to twenty percent, fifty percent, or one hundred percent, other than the Commission's feeling "that the ten-percent nomination is a reasonable limit on a program that is still experimental." *Rehearing Order*, 29 F.E.R.C. at 61,697. Reasoned decisionmaking, as we explained in *MPC I*, 761 F.2d at 778–79, cannot be dispensed with in the name of experimentation. Second, for the reasons stated in *MPC I*, *id.* at 777–78, we cannot accept as dispositive or even persuasive the Commission's "intention to

avoid any potential adverse affects [sic] of cost-shifting that could result from more substantial market restructuring." *Rehearing Order*, 29 F.E.R.C. at 61,697. Finally, we recognize that the Commission has now voiced the assumption, implicit in the original SMP orders, that requiring nondiscriminatory sales of SMP gas to captives "may be counter-productive. It may result in less SMP gas being moved which would be to the detriment of all end users." *Id.* at 61,700. But the Commission offers support neither for the forecast that less SMP gas would move nor for the assertion that this slowdown would ultimately harm all end users including captive consumers. *See MPC I*, 761 F.2d at 775–77.

The Commission has begun to grapple, however belatedly, with the petitioners' vigorously argued view of the natural gas market; the Commission's response to our show-cause order affords us a preview of the shape a reasonable counterargument might take. But the Commission is obliged thoroughly to evaluate an argument before rejecting it, and that evaluation must take place at the administrative level. The contentions of counsel on judicial review will not suffice. *See id.* at 775.

### III.

In summary, we are persuaded that the new SMP orders are of a piece with the old. They proceed on the same premises and aim to solve the same problems. They may be marginally less discriminatory than their predecessors, but they continue to entail identical lapses of logic and evidence.

Nevertheless, we believe that we should allow the current SMP orders to die a natural death. They are scheduled to expire on October 31, 1985, the day by which the Commission hopes to promulgate new rules that may effect fundamental changes in the marketing of natural gas. *See* Notice of Proposed Rulemaking, 50 Fed.Reg. 24,-130 (1985). The rules, we recognize, may not be adopted as proposed; and even as proposed, the Commission's prescriptions do not indicate that SMPs will be supplanted rather than grandfathered. But the Commission deserves the benefit of the doubt. It may well be that, in the short term between now and October 31, vacation of the SMP orders would do more harm than good. *See* Response of the Process Gas Consumers Group to Show Cause Order in Support of Petitioner at 17.

In any event, until the advent of the winter heating season in November, the impact of supracompetitive prices on captive consumers is not likely to be especially severe. Finally, we note that we have taken similar action in *Maryland People's Counsel v. FERC*, 768 F.2d 1354 (D.C.Cir. 1985) (order granting stay of mandate). The SMP orders and the blanket certificate transportation program are portrayed as components of a comprehensive Commission response to the problems of the natural gas market; it is appropriate, we believe, to grant them both the same limited amnesty. If the Commission wishes to retain discriminatory SMPs in some form after October 31, we trust that it will do so only if it can demonstrate that the petitioners' concerns are unfounded or are outweighed by other relevant considerations.

The challenged orders are remanded to the Commission for proceedings consistent with this opinion.

*It is so ordered.*